1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,        )
                                      )     CR NO. S-04-65 GEB
11                   Plaintiff,       )
                                      )
12        v.                          )     ORDER
                                      )
13   BILLY D. SOUTHERLAND,            )
                                      )
14                   Defendant.       )
     ─────────────────────────────── )
15

16        On March 28, 2005, Defendant Billy D. Southerland filed a

17   motion under 18 U.S.C. § 3143 for release pending his sentencing

18   hearing.  A jury found Southerland guilty of two counts of mail fraud

19   and one count of wire fraud on March 22, 2005.  Southerland's

20   sentencing hearing is presently scheduled to be held on June 10, 2005.

21   The government opposes Southerland's release motion, arguing that he

22   would be both a danger and a flight risk if released.  Southerland

23   argues he should be released because he has already served the maximum

24   sentence he could receive based on the jury's verdict.  The motion was

25   argued April 8, 2005.

26        The Magistrate Judge's May 24, 2004, Order detained

27   Southerland because of the risk of danger he posed.  (May 24

28   Magistrate Judge's Order at 2.)  The Order indicated that Southerland

                                     1

also posed a flight risk but stated that "conditions could be

fashioned to overcome flight risk concerns."[1]  (Id.)  It has not been

shown that the risk of danger basis upon which Southerland was

detained before his trial continues to justify his detention.

Therefore, the only remaining reason justifying

Southerland's detention is his potential to flee.  Title 18 U.S.C. §

3142(g) specifies the factors to be considered when "determining

whether there are conditions of release that will reasonably assure

the appearance [of Southerland] as required. . . ."  The factors are

the nature and circumstances of the offense charged, the weight of the

evidence against Southerland, and Southerland's history and

characteristics, including such matters as family ties, employment,

financial resources, and past conduct.

1.   Nature and Circumstances of the Crimes of Conviction

The parties dispute the nature and circumstances of

Southerland's crimes of conviction for which he can be sentenced.

Southerland argues the jury "verdict involved two separate

individuals, with a maximum combined loss totalling $945." (Def.'s

Second Amended Mot. for Release Pending Sentencing ("Motion") at 3-4.)

Southerland contends the maximum prison sentence he could receive

under the advisory Sentencing Guidelines is ten months, and since he

has been in continuous federal custody since January 30, 2004, he has

already served time in excess of the maximum sentence he could

receive.  Therefore, Southerland contends irrespective of the nature

of the crimes of his conviction, he has no incentive to flee because

he has already served more time than he could be sentenced to receive.

_____

[1]   The referenced conditions are specified in the
Magistrate Judge's Order filed April 8, 2004, at pages 10 and 11.

1    The government counters in its opposition brief that
2  Southerland "was convicted of mail and wire fraud for defrauding
3  numerous people of a minimum of $600,000 in 2003, and an additionally
4  large sum in 2002." (Gov't Opp'n to Def.'s Mot. for Release Pending
5  Sentencing ("Opp'n") at 3.)  The government contends Southerland's
6  "minimum sentencing guideline range is 70 to 87 months [and] that this
7  estimate is the minimum based on a loss amount . . . for 2003 only";
8  and "only includes those people in 2003 who paid money, failed to get
9  their vehicles moved, and did not get their money back."[2]  (Id.)
10 Southerland counters that the government's position is plainly wrong
11 under Blakely since it represents an amount of loss that exceeds what
12 is authorized by the jury verdict. (Def.'s Reply to Gov't Opp'n
13 ("Reply") at 1-2.)  The government rejoined at the April 8 hearing
14 that what Southerland argues concerns a sentencing issue, that in this
15 case the government followed the Department of Justice's position on
16 handling the amount of loss issue, and that government counsel was not
17 ready to give additional argument because Southerland filed his
18 release motion late.

19    The government's conclusory argument does not support its
20 amount of loss contention; nor does Southerland's argument appear to
21 reflect the full amount of loss that is authorized by the jury
22 verdict.  But at this stage of the proceeding, it is unclear what
23 amount of loss will be determined to be authorized by the jury's
24 verdict.  This is a sentencing determination that will be decided
25 through the sentencing process, which includes a presentence report.

26

27    [2]   The government also argues that it does not concede
   "this low number is the loss that should be applied in this
28 case. . . ."  (Id. at 3 n.1.)

Even after the advisory Guideline sentencing range is determined, the
actual sentence imposed will be determined under 18 U.S.C. § 3553(a).

This factor has not been shown to preclude Southerland's
release.

## 2.   The Weight of the Evidence

Substantial evidence shows that Southerland is guilty of the
false representations reflected in the jury verdict.  For instance,
the trial record shows that Southerland deceived several people about
the performance rate of his car moving business.  The trial record
supports the convictions and since Southerland was found to be a
flight risk even before he was convicted, the convictions indicate
that Southerland has additional incentive to flee if he is released.

## 3.   Defendant's History and Personal Characteristics

The jury verdict, which convicted Southerland of three
felony counts of fraud, and the trial record shed light on
Southerland's history and personal character.  The trial testimony
revealed that Southerland was verbally abusive when communicating with
some of his customers during telephone conversations, and that this
abuse at times included name calling, use of expletives, and rudely
hanging up on some of his customers.

Southerland's Pretrial Services Report dated February 2,
2004 ("PSR"), recommended that Southerland be detained as a flight
risk.  This PSR reveals Southerland's criminal history, which includes
a 1971 voluntary manslaughter conviction; and a conviction for
disturbing the peace for which he was sentenced to one year probation
in April 2002.

The transcript of Southerland's detention hearing held
February 4, 2004, reveals that the Magistrate Judge essentially found

4

1  that Southerland was in the process of trying to flee when law

2  enforcement agents encountered him on his premises, which they were

3  then about to search pursuant to a search warrant.  The transcript

4  reveals when Southerland was then encountered, "the house was packed,

5  the car was packed, and there was a passport and $12,000 cash in [a

6  safe located in a] truck."  (TR at 4, 23.)  The Magistrate Judge also

7  observed that "according to the government, there's a minimum of a

8  million dollars missing here. . ." and that Southerland's action

9  "seems like flight . . . ."  (Id. at 12.)  Although it was argued at

10  that detention hearing that Southerland was on his way to Texas, the

11  Magistrate Judge observed, "you don't need a passport to go to Texas."

12  (Id. at 23.)  A law enforcement agent told the prosecution at the

13  hearing that at the end of the day on which Southerland's premises was

14  searched, Southerland stated he intended to go to Scotland.  (Id. at

15  24.)  The agent related that Southerland said "there's a passport and

16  cash in a safe in the back of the Suburban, I want it."  (Id. at 25.)

17  "I'm going to Scotland."  (Id.)

18       Southerland's attorney argued Southerland did not tell the

19  agent he was going to Scotland, but Southerland's counsel stated at

20  the end of the hearing that Southerland has been to Scotland before,

21  "he's Scottish" and Southerland had "a reservation to go to Scotland

22  in June."  (Id. at 31, 33.)  Also, the "agents were told by one of the

23  gentlemen that ran [Southerland's] computer system, that Mr.

24  Southerland had said to this person . . . that [he] could run this

25  system from Belize or Scotland."  (Id. at 30.)  This computer system,

26  or internet business, was involved with the crimes of which

27  Southerland was convicted.  (Id.)

28       The Magistrate Judge questioned Southerland's veracity by 6

5

indicating that the record revealed Southerland said "he was going to Scotland three times, and [had] the computer system . . . set up [so] it could be run from Scotland." (Id. at 32-33.)  The Magistrate Judge concluded that Southerland is "a flight risk" and "[t]here are no reasonable conditions to ensure against flight. . . ." (Id. at 34.)

But Southerland again sought release pending trial.  At a subsequently held detention hearing on March 31, 2004, the record contains information bearing on Southerland's veracity.  At this detention hearing, Southerland submitted misleading information regarding the equity in his residence in Anderson.  Specifically, he submitted a letter from a real estate agent, Ken Murray, as evidence of $150,000 fair market value of the property.  When this letter was submitted to the Court, his property was listed on the Multiple Listings Service through another real estate agent.  The Magistrate Judge ordered Southerland released on bond which would be secured by his Anderson property.  But Southerland failed to tell the Court that he had filed a homestead exemption between the time of ordering a title report and offering the documents to the Court.  On May 12, 2004, the Magistrate Judge set Southerland's bond at a minimum of $48,000.

The effect of filing the homestead exemption was that there was no available equity, because pursuant to California Civil Procedure Code sections 704.720 and 704.730, upon the sale -- voluntary or by execution -- up to $75,000 of the proceeds from the sale of the property must be paid to the homesteader.  Thus, the equity Southerland offered for his appearance bond appeared to be illusory.

1    In addition, at the May 12 detention hearing, the Magistrate
2 Judge was troubled about why Southerland allowed his wife and daughter
3 to testify falsely in regards to his violent nature.  As pointed out
4 by the Magistrate Judge in her Order filed May 24, 2004:

> [B]ased on the filing of letters of clarification
> by Mrs. Southerland and Mrs. Hurst following the
> hearing on May 12th, the court infers that neither
> person was willing or able to testify regarding
> the substance of the clarifying information
> related to defendant's abusive behavior in
> defendant's presence [at the detention hearing].
> This unwillingness or inability further suggests
> defendant exerts some level of intimidation or
> control over his wife and daughter, however subtle
> or subconscious.
>
>                            ***
>
> While the court is cognizant of defendant's 5th
> Amendment rights, it is troubled by the lack of
> any apparent initiative on defendant's part to
> assist his counsel in clarifying the record made
> at the May 12th hearing, particularly with regard
> to the 1989 restraining order obtained by Mrs.
> Southerland.  If in fact the abuse alleged in the
> restraining order application is past history,
> defendant could not have been penalized by helping
> to ensure the court was aware of its existence.
> Under the circumstances, the court infers
> defendant was more than willing to countenance the
> creation of a misleading impression if it would
> facilitate his release.

20 (May 24 Order at 11-12 and n.10 (citation omitted)).
21 Even though this observation was made about Southerland's veracity in
22 the May 24 Order, that same Order states "that conditions could be
23 fashioned to overcome flight risk concerns."  (May 24 Order at 2.)

24    4.   Family Ties
25    The record is devoid of evidence of family ties evincing
26 that Southerland has relationships with family members "wherein the
27 family members had some control, either physical or emotional, over
28 [Southerland's] action."  United States v. Trosper, 809 F.2d 1107,

                                    7

1  1110 (5th Cir. 1987).  Although Southerland indicated through his

2  attorney at the April 8 hearing that he desires to see his grandchild

3  who was born while he has been incarcerated, this desire does not show

4  the existence of a family relationship likely to dissuade Southerland

5  from fleeing.  Since Southerland was in the process of leaving

6  California at the time of the search of his premises, at that time he

7  presumably did not have a sufficient family tie to this community to

8  dissuade him from leaving the area.  Therefore, at the present time,

9  Southerland's family ties offer no assurance of his appearance at

10  future proceedings.

11                              Conclusion

12          In conclusion, the section 3142(g) factors reveal that

13  Southerland is a flight risk.  But Southerland argued in his Reply

14  brief that this risk can "be quelled by conditions of release."

15  (Reply at 3.)  The Magistrate Judge previously found a combination of

16  conditions that could be imposed to reasonably assure his appearance

17  as required in this case.  (April 8, 2004, Order at 10-11.)  All of

18  those conditions still apply to Southerland's release except for the

19  first portion of Condition No. 7, which states "you shall seek and/or

20  maintain employment."  However, since there has been no showing that

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

8

1   these conditions of release have been satisfied, Southerland's motion

2   for release pending sentencing is denied.[3]

3   Dated:  April 26, 2005

4

5                                    /s/ Garland E. Burrell, Jr.
                                     GARLAND E. BURRELL, JR.
6                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      [3]      Since Southerland was found non-releasable because of
        the risk of danger factor, perhaps this is why he did not attempt
25      to satisfy the conditions of risk applicable to the flight risk
        factor.  Southerland indicated at the April 8 hearing and in his
26      Reply brief that he believes he could satisfy conditions that
        would allow him to be released and, therefore, his Motion for
27      Return of Property need not be considered if a conditional
        release order issued.  Therefore, Southerland's Motion for Return
28      of Property is deemed withdrawn.