1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                      EASTERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,           )
                                         )     2:04-cr-0065-GEB
11                       Plaintiff,      )
                                         )     TENTATIVE SENTENCING
12        v.                             )     RULINGS ON AMOUNT OF
                                         )     LOSS AND OBSTRUCTION
13   BILLY SOUTHERLAND,                  )     OF JUSTICE
                                         )
14                       Defendant.      )
                                         )
     _____)

15

16        The government and Defendant each object to the

17   $640,000 amount of loss finding in the Presentence Report

18   ("PSR").  The government argues the loss amount "should be at

19   least $1,000,000," which is "computed as the total amount taken

20   by the defendant based on false statements to customers who did

21   not get their vehicles moved and to whom the defendant failed to

22   return their money."  (Gov't Obj. to PSR filed 7/22/05 at 7-8.)

23   The government contends this estimated loss amount is based upon

24   Defendant's fraud scheme, in which several victims paid

25   Defendant's car transport business to transport a vehicle which

26   was not transported.

27        Specifically, the government argues in its Objection to

28   the PSR:

                                    1

1

Evidence at trial showed that during the year
2003 (from December 18, 2002 through

2

November 30, 2003, the defendant had 3,659
customers who paid money to the defendant.

3

The evidence was that the defendant always
charged a $200 fee minimum.  A reasonable

4

estimate of the number of victims for 2002
would be to use the number of victims for

5

2003, or 3,659. At $200 per customer, the
total estimated loss for 2002 would be

6

$731,800.

7

***

8

Therefore, a reasonable estimate for both
years would be the 2003 figure above

9

($812,488), plus the 2002 figure above
($731,800), for a total for both years of

10

$1,544,288.

11

If the loss amount is over $1,000,000,
pursuant to U.S.S.G. § 2B1.1(b)(1)(I), 16

12

levels should be added.

13

(Gov't Obj. to PSR at 9-10).

14

The government filed a supplemental brief on August 7,

15

2005, in which it argues:

16

The government asks the Court to determine
the loss amount to be either $604,585, or

17

$1,544,288. Either figure is for money paid
by customers to the defendant for moving

18

their vehicles, for which the defendant
failed to move the vehicles and failed to

19

refund the $200 deposit he took from them.

20

The figure $604,585 is the amount of money
taken according to the defendant's own

21

computer records for the period of December
2002, through November of 2003, as testified

22

to by Dr. Melody Stapleton. Although this
figure does not include the entire relevant

23

period of conviction, it is evidence which
was introduced at trial based on the

24

defendant's records.

25

The figure $1,544,288 is the government's
offer to the Court for a reasonable estimate

26

for roughly the period of indictment, 2002
and 2003.

27

28

(Gov't Supplemental P.&.A.s Re Sentencing at 5.)

2

1      Defendant argues in his objection to the PSR that the

2  loss figure is based on facts that increase Defendant's sentence

3  beyond what is authorized by the jury verdict.  (Def.'s Obj. to

4  PSR filed 7/25/05 at 17.)  Defendant contends that, based on the

5  jury's special verdict, the amount of loss is $945.00.  (Id. at

6  19.)  Defendant argues he requested the special verdict so he

7  could "obtain a jury determination of all the factual issues

8  essential to judgment."  (Id.)  The essence of Defendant's

9  position is that only the loss amounts involved in the counts of

10 conviction can be included in the amount of loss figure.

11      The three counts of conviction found Defendant guilty

12 of making three specific false statements.[1]  It is evident that

13 through those false statements Defendant intended to deprive the

14 victims of money.  "[L]oss is the greater of actual loss or

15 intended loss."  U.S.S.G. § 2B1.1, Cmt. n.3(A); see also United

16 States v. Blitz, 151 F.3d 1002, 1009 (9th Cir. 1998) ("[W]hen 'an

17 intended loss that the defendant was attempting to inflict can be

18 determined, this figure will be used if it is greater than the

19 actual loss.'").  The parties dispute the actual loss at issue.

20 However, the intended loss can be determined.

21      "[I]ntended loss is a proper measure to use in fraud

22

23      [1]   "[T]wo interrelated but separate offenses" are
identified in 18 U.S.C. § 1341: (1) the offense of "engaging in a
scheme or artifice to defraud, or (2) engaging in a scheme to
24 obtain money or property by false or fraudulent pretenses."
United States v. Haber, 251 F.3d 881, 888 (10th Cir. 2001).  "[A]
25 scheme to defraud focuses on the intended end result, not on
whether a false representation was necessary to effect the
26 result. . .  A scheme to obtain money by false or fraudulent
pretenses, representations, or promises, on the other hand,
27 focuses on the means by which money was obtained."  Id. at n.3
(quotation marks and citation omitted) (emphasis added).
28

3

1  cases."  <u>Blitz</u>, 151 F.3d at 1009.  "'Intended loss' (I) means the
2  pecuniary harm that was intended to result from the offense; and
3  (II) includes intended pecuniary harm that would have been
4  impossible or unlikely to occur."  U.S.S.G. § 2B1.1, Cmt.
5  n.3(A)(ii).  "The Sentencing Guidelines only require "a
6  calculation of 'intended loss' and do[] not require a finding
7  that the intentions were realistic."  <u>United States v. Koenig</u>,
8  952 F.2d 267, 271-72 (9th Cir. 1991); <u>see also</u> <u>Blitz</u>, 151 F.3d at
9  1010 ("We have not . . . hesitated to hold defendants responsible
10 for the full reach of their intent, even when that intent was
11 thwarted.").
12          "The court need only make a reasonable estimate of the
13 loss."  U.S.S.G. § 2B1.1, Cmt. n.3(C); <u>United States v. Ameri</u>,
14 412 F.3d 893, 901 (8th Cir. 2005) (stating "the Guidelines do not
15 demand precision in loss calculations," and citing U.S.S.G. §
16 2B1.1, Cmt. n.3(C)).
17              Nothing in the mail and wire fraud statutes
                requires that the party deprived of
18              money. . . be the same party who is actually
                deceived.  The phrase "scheme or artifice
19              . . . for obtaining money or property by
                means of false or fraudulent pretenses,
20              representations, or promises," 18 U.S.C.
                § 1341, is broad enough to include a wide
21              variety of deceptions intended to deprive
                another of money or property. . . .  We see
22              no reason to read into the statutes an
                invariable requirement that the person
23              deceived be the same person deprived of the
                money or property by the fraud.
24
25 <u>United States v. Christopher</u>, 142 F.3d 46, 54 (1st Cir. 1998).
26 Thus, the issue is not whether a victim was actually deceived,
27 but whether Defendant intended his false statements to deceive
28 potential victims.

                                    4

1        Here, in convicting Defendant of Count 4, the jury

2   found that Defendant engaged in a fraudulent scheme for obtaining

3   money by falsely stating in a promotion of his company on the

4   Internet that: "We have a great on-time record of pick-up and

5   deliveries!!  Superior performance with a fail rate of 2% or less

6   in most areas!!"[2]  (See Trial Exhibit 4.1; see also Verdict,

7   Count 4, in which the jury stated: "False statement- Percentage

8   of fail rate false- Exhibit 4.1.")  This scheme resulted in

9   victims paying money to Defendant to move their vehicles.

10       It is difficult to determine all the intended loss

11  wreaked from this scheme.  However, the trial evidence makes

12  pellucid that Defendant used this false statement to at least

13  obtain what he characterized as a $200 deposit administrative

14  fee, which he kept regardless of his failure to move a victim's

15  vehicle as represented in the statement.

16       It is reasonable to estimate the intended loss by the

17  reasonably estimated number of $200 "deposits" Defendant kept for

18  the period involved with his use of this fraudulent statement.

19  As the government argues, the trial evidence "showed that during

20  the year 2003 (from December 18, 2002, through November 30,

21  2003," Defendant kept the "$200 deposit" of 3,659 customers.[3]

22  Defendant disagrees, arguing that the government's 3,659 figure

23

24       [2]    Based upon the trial record, the reasonable inference
    is drawn that this representation and other similar
25  representations were made during the applicable time period.

26       [3]    It is recognized that the government argues Defendant's
    customers from the year 2002 should be included in the loss
27  determination.  Defendant disagrees, arguing that Defendant's
    failure rate that year does not justify the inclusion.  (Def.'s
28  Resp. to Gov't Supplemental P.&.A.s Re Sentencing filed 8/8/05 at
    7.)

1  should not be used because it includes "satisfied customers."

2  (Def.'s Resp. to Gov't Supplemental P.&.A.s Re Sentencing filed

3  8/8/05 at 6.)  But "the law appears to be well settled that in a

4  prosecution of this type, the government is not required to prove

5  that anyone was defrauded or that any [customer] sustained loss."

6  Farrell v. United States, 321 F.2d 409, 414 (9th Cir. 1963); see

7  also United States v. Rasheed, 663 F.2d 843, 850 (9th Cir. 1981).

8           Defendant's conviction involves his use of the mail to

9  obtain at least the $200 deposit via the fraudulent statement,

10 "and the persons communicated with through the mails are only

11 important to identify and show the scheme" evinced in the

12 statement.  United States v. Dreer, 457 F.2d 31, 33 (3d Cir.

13 1972).  "[C]onduct which was part of [this] scheme is counted [in

14 the intended loss calculation], even though the defendant was not

15 convicted of crimes based upon the related conduct."  United

16 States v. Fine, 975 F.2d 596, 600 (9th Cir. 1992); United States

17 v. Rogers, 321 F.3d 1226, 1231 (9th Cir. 2003) (stating that "the

18 loss is not limited by the counts of conviction"); cf. United

19 States v. Brewer, 528 F.2d 492, 497 (4th Cir. 1975) (indicating

20 it is of no consequence that Defendant's use of the mails did not

21 involve sending a letter to a victim, "for the victim need not be

22 the recipient of the material that is mailed").

23           Therefore, a reasonable estimate of the amount of

24 intended loss is $731,800, which is the total amount of the $200

25 deposits that were taken by Defendant from December 18, 2002,

26 through November 30, 2003.

27           Defendant further objects to the obstruction of justice

28 enhancement.  This objection is sustained since it is unclear

6

1  whether the enhancement is sustainable under the applicable

2  perjury standard.

3      For the stated reasons, Defendant's offense level is 26

4  and his Guideline range is 70 to 87 months' imprisonment.

5  Dated:  August 9, 2005

6

7                                   /s/ Garland E. Burrell, Jr.
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28