```
 1
 2
 3
 4
 5
 6
 7                      UNITED STATES DISTRICT COURT
 8                     EASTERN DISTRICT OF CALIFORNIA
 9
10  UNITED STATES OF AMERICA,    )
                                 )    CR NO. S-04-65 GEB
11               Plaintiff,      )
                                 )
12       v.                      )    TENTATIVE RULING
                                 )
13  BILLY D. SOUTHERLAND,        )
                                 )
14               Defendant.      )
                                 )
15
16
```

17      Defendant Southerland moves for "an order staying the
18 imprisonment portion of his sentence pending the Ninth Circuit's
19 decision on his appeal from the district court's orders, judgment and
20 sentence in this case." (Motion at 1.)  Southerland argues his appeal
21 raises substantial questions of law and fact.  The government opposes
22 the motion, stating in its opposition that "the court's rulings were
23 correct" and do not involve "issues that are fairly debatable, that
24 would likely result in a reversal, order for new trial, or a reduced
25 sentence." (Gov't Opp'n to Def.'s Mot. for Release Pending Appeal
26 ("Opp'n") at 11.)

27      The parties also dispute whether Southerland is likely to
28 flee or be or a danger to the community if released.

## Discussion

### A. Blakey/Booker Issue

Southerland contends his "Fifth Amendment due process and grand jury right to be indicted on the amount of loss" was violated when he was sentenced "on a loss figure that was not charged in the indictment. . . ."  (Motion at 5.)  The essence of Southerland's argument appears to be that his sentence on the judicially-found loss figure of $604,585 was illegal since that loss amount was not authorized by the jury verdict.  Southerland "received a 14 point increase in his offense level due to the court's calculation of loss." (Motion at 6.)  Southerland makes several fairly debatable arguments against the amount of loss finding.[1]  But see United States v. Dupas, 417 F.3d 1064, 1069 (9th Cir. 2005) (indicating that a defendant has fair notice "when he committed his crime" and was found guilty "that his sentence could be based on a judicial determination of the amount of intended loss and set within the applicable statutory maximum").

However, the remaining issues Southerland argues do not present substantial questions.  Notwithstanding the existence of substantial questions, before Southerland can be released pending appeal, it must be found "by clear and convincing evidence that [Southerland] is not likely to flee or pose a danger to any other person or the community."  18 U.S.C. § 3143(a)(2)(B).

---

[1] The Rule 32 Sentencing Order on the loss states Southerland's offense is the same whether an actual loss or intended loss figure is used.  See Order filed August 15, 2005, at 7 and 8, n.5.  But Southerland vigorously disputes both loss amount figures.

<u>Danger to the Community</u>

The issue of dangerousness in this case concerns whether Southerland poses an economic danger to the community if he is released. Southerland's apparent obliviousness at his sentencing to the criminal activities underlying the jury guilty verdict, coupled with his complete lack of remorse and proclamations of innocence indicate that he is not averse to engaging in the type of criminal behavior again. But in light of his age and apparent lack of assets to start a business, I do not find him to pose an economic danger to the community if he is released.

<u>Flight Risk</u>

The government argues that this Court previously denied Southerland's release and that nothing has changed since that ruling other than "the fact that the defendant is now a sentenced prisoner." (Opp'n at 4.) However, this Court's previous ruling on Southerland's request for release pending his sentencing hearing found Southerland "is a flight risk" and authorized his release under a "Magistrate Judge['s] previously found . . . combination of conditions [of release] . . . except for the first portion of Condition No. 7, which [required Southerland to] 'seek and/or maintain employment.'" (Order filed April 26, 2005, at 8.)

The factors in 18 U.S.C. § 3142(g) that are to be considered when assessing the risk of flight include: (1) the nature and circumstances of the charges and counts of conviction, (2) the weight of the evidence, (3) defendant's history and personal characteristics, and (4) defendant's family ties.

a.  <u>Nature and Circumstances of Charges and Counts of Conviction</u>

Southerland was convicted of mail fraud.  Southerland's scheme to defraud involved thousands of victims who suffered a loss by paying money to Southerland's vehicle moving business to get their vehicles moved but did not get their vehicles moved.  Southerland obtained from victims a minimum of $200 through a fraudulent representation about his vehicle moving business's movement success rate, which constituted an intended loss of $439,400 ($200 multiplied by the number of victims between December 18, 2002, through November 30, 2003).  (Rule 35 Sentencing Order filed Aug. 15, 2005, at 7-8, n.5.)  After Southerland obtained certain victims' money, his behavior toward them was obnoxious, obscene and insulting.  This factor weighs against bail.

b.  <u>The Weight of the Evidence</u>

Substantial questions are involved with determination of the amount of loss, which if resolved in Southerland's favor, would result in a sentence less than the sixty-seven month prison sentence Southerland received.  This factor favors release.

c.  <u>History and Personal Characteristics</u>

These factors are discussed in the April 26, 2005, Order as follows:

> The jury verdict, which convicted Southerland of three felony counts of fraud, and the trial record shed light on Southerland's history and personal character.  The trial testimony revealed that Southerland was verbally abusive when communicating with some of his customers during telephone conversations, and that this abuse at times included name calling, use of expletives, and rudely hanging up on some of his customers.

4

Southerland's Pretrial Services Report dated February 2, 2004 ("PSR"), recommended that Southerland be detained as a flight risk. This PSR reveals Southerland's criminal history, which includes a 1971 voluntary manslaughter conviction; and a conviction for disturbing the peace for which he was sentenced to one year probation in April 2002.

The transcript of Southerland's detention hearing held February 4, 2004, reveals that the Magistrate Judge essentially found that Southerland was in the process of trying to flee when law enforcement agents encountered him on his premises, which they were then about to search pursuant to a search warrant. The transcript reveals when Southerland was then encountered, "the house was packed, the car was packed, and there was a passport and $12,000 cash in [a safe located in a] truck." (TR at 4, 23.) The Magistrate Judge also observed that "according to the government, there's a minimum of a million dollars missing here. . ." and that Southerland's action "seems like flight . . . ." (Id. at 12.) Although it was argued at that detention hearing that Southerland was on his way to Texas, the Magistrate Judge observed, "you don't need a passport to go to Texas." (Id. at 23.) A law enforcement agent told the prosecution at the hearing that at the end of the day on which Southerland's premises was searched, Southerland stated he intended to go to Scotland. (Id. at 24.) The agent related that Southerland said "there's a passport and cash in a safe in the back of the Suburban, I want it." (Id. at 25.) "I'm going to Scotland." (Id.)

Southerland's attorney argued Southerland did not tell the agent he was going to Scotland, but Southerland's counsel stated at the end of the hearing that Southerland has been to Scotland before, "he's Scottish" and Southerland had "a reservation to go to Scotland in June." (Id. at 31, 33.) Also, the "agents were told by one of the gentlemen that ran [Southerland's] computer system, that Mr. Southerland had said to this person . . . that [he] could run this system from Belize or Scotland." (Id. at 30.) This computer system, or internet business, was involved with the crimes of which Southerland was convicted. (Id.)

The Magistrate Judge questioned Southerland's veracity by indicating that the record revealed Southerland said "he was going to Scotland three

times, and [had] the computer system . . . set up [so] it could be run from Scotland." (Id. at 32-33.) The Magistrate Judge concluded that Southerland is "a flight risk" and "[t]here are no reasonable conditions to ensure against flight. . . ." (Id. at 34.)

But Southerland again sought release pending trial. At a subsequently held detention hearing on March 31, 2004, the record contains information bearing on Southerland's veracity. At this detention hearing, Southerland submitted misleading information regarding the equity in his residence in Anderson. Specifically, he submitted a letter from a real estate agent, Ken Murray, as evidence of $150,000 fair market value of the property. When this letter was submitted to the Court, his property was listed on the Multiple Listings Service through another real estate agent. The Magistrate Judge ordered Southerland released on bond which would be secured by his Anderson property. But Southerland failed to tell the Court that he had filed a homestead exemption between the time of ordering a title report and offering the documents to the Court. On May 12, 2004, the Magistrate Judge set Southerland's bond at a minimum of $48,000.

The effect of filing the homestead exemption was that there was no available equity, because pursuant to California Civil Procedure Code sections 704.720 and 704.730, upon the sale -- voluntary or by execution -- up to $75,000 of the proceeds from the sale of the property must be paid to the homesteader. Thus, the equity Southerland offered for his appearance bond appeared to be illusory.

In addition, at the May 12 detention hearing, the Magistrate Judge was troubled about why Southerland allowed his wife and daughter to testify falsely in regards to his violent nature. As pointed out by the Magistrate Judge in her Order filed May 24, 2004:

> [B]ased on the filing of letters of clarification by Mrs. Southerland and Mrs. Hurst following the hearing on May 12th, the court infers that neither person was willing or able to testify regarding the substance of the clarifying information related to defendant's abusive behavior in defendant's presence [at the detention hearing]. This unwillingness or inability further suggests defendant exerts some level of intimidation

6

> or control over his wife and daughter, however subtle or subconscious.
>
> \*\*\*
>
> While the court is cognizant of defendant's 5th Amendment rights, it is troubled by the lack of any apparent initiative on defendant's part to assist his counsel in clarifying the record made at the May 12th hearing, particularly with regard to the 1989 restraining order obtained by Mrs. Southerland. If in fact the abuse alleged in the restraining order application is past history, defendant could not have been penalized by helping to ensure the court was aware of its existence. Under the circumstances, the court infers defendant was more than willing to countenance the creation of a misleading impression if it would facilitate his release.

(May 24 Order at 11-12 and n.10 (citation omitted)). (April 26 Order at 4-7.)

Further, in light of Southerland's proclamation of his innocence at his sentencing hearing, it is assumed that he has a motive to flee so he could avoid facing approximately thirty-five months of additional prison time for business practices found by the jury to be fraudulent but which he opines were legal. These factors do not favor release.

     d.   <u>Family Ties</u>

As stated in the April 26 Order,

> the record is devoid of evidence of family ties evincing that Southerland has relationships with family members "wherein the family members had some control, either physical or emotional, over [Southerland's] action." <u>United States v. Trosper</u>, 809 F.2d 1107, 1110 (5th Cir. 1987). Although Southerland indicated through his attorney at the April 8 hearing that he desires to see his grandchild who was born while he has been incarcerated, this desire does not show the existence of a family relationship likely to dissuade Southerland from fleeing. Since

7

>           Southerland was in the process of leaving
>           California at the time of the search of his
>           premises, at that time he presumably did not have
>           a sufficient family tie to this community to
>           dissuade him from leaving the area.  Therefore, at
>           the present time, Southerland's family ties offer
>           no assurance of his appearance at future
>           proceedings.

(April 26 Order at 7-8.)

This factor does not favor release.

Consideration of all the factors reveal that there is no condition or combination of conditions which would reasonably assure Southerland's appearance at future court proceedings.  Therefore, his motion is denied and he is detained as a flight risk.

Dated:  September 8, 2005

                              /s/ Garland E. Burrell, Jr.
                              GARLAND E. BURRELL, JR.
                              United States District Judge